| | |
|---|---|
| 1 | Larry W. McFarland (Bar No. 129668) |
| | E-Mail: lmcfarland@kilpatricktownsend.com |
| 2 | Christopher T. Varas (Bar No. 257080) |
| | E-Mail: cvaras@kilpatricktownsend.com |
| 3 | Kollin J. Zimmermann (Bar No. 273092) |
| | E-Mail: kzimmemann@kilpatricktownsend.com |
| 4 | KILPATRICK TOWNSEND & STOCKTON LLP |
| | 9720 Wilshire Boulevard, Penthouse Suite |
| 5 | Beverly Hills, California 90212 |
| | Telephone: (310) 248-3830 |
| 6 | Facsimile: (310) 860-0363 |
| 7 | James G. Gilliland, Jr. (Bar No. 107988) |
| | E-Mail: jgilliland@kilpatricktownsend.com |
| 8 | Ryan T. Bricker (Bar No. 269100) |
| | E-Mail: rbricker@kilpatricktownsend.com |
| 9 | KILPATRICK TOWNSEND & STOCKTON LLP |
| | Eighth Floor, Two Embarcadero Center |
| 10 | San Francisco, California 94111-3833 |
| | Telephone: (415) 576-0200 |
| 11 | Facsimile: (415) 576-0300 |

Attorneys for Plaintiff
INSTAGRAM, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| INSTAGRAM, LLC, a Delaware Limited Liability Company,<br><br>　　　　　　Plaintiff,<br><br>　　　v.<br><br>ZHOU MURONG, an individual, HE GUIHE, an individual, ZHOU MUFEN, an individual, and ZHOU MEIFANG, an individual,<br><br>　　　　　　Defendants. | **CASE NO.:**<br><br>**COMPLAINT FOR:**<br><br>**(1) VIOLATION OF 15 U.S.C. § 1125(d);**<br><br>**(2) DECLARATORY JUDGMENT OF VALIDITY OF AGREEMENT;**<br><br>**(3) DECLARATORY JUDGMENT RE OWNERSHIP OF PROPERTY AS GOOD FAITH PURCHASER FOR VALUE**<br><br>**<u>DEMAND FOR JURY TRIAL</u>** |

Plaintiff Instagram, LLC ("Instagram") brings this action against Defendants Murong Zhou ("Murong"), Guihe He ("Guihe"), Mufen Zhou ("Mufen"), and Meifang Zhou ("Meifang") (collectively, "Defendants") for injunctive and declaratory relief and damages.

## NATURE OF THE ACTION

1. This is an action for violation of the Lanham Act, 15 U.S.C. § 1125(d) and for declaratory judgment as to the validity of a domain name purchase agreement and Instagram's rights thereto as a good faith purchaser for value and otherwise.

## THE PARTIES

2. Plaintiff Instagram is a limited liability company organized and existing under the laws of the State of Delaware with its principal place of business in Menlo Park, California.

3. Defendant Murong is an individual residing in Guangdong, China.

4. Defendant Guihe is an individual residing in Zhejiang, China. Instagram is informed and believes that Defendant Guihe is Murong's mother.

5. Defendant Mufen is an individual residing in Zhejiang, China. Instagram is informed and believes that Defendant Mufen is Murong's sister.

6. Defendant Meifang is an individual residing in Guangdong, China. Instagram is informed and believes that Defendant Meifang is Murong's sister.

7. On information and belief, the actions alleged herein to have been undertaken by Defendants were undertaken by each Defendant individually, were actions that each Defendant conspired to cause to occur, were actions that each Defendant authorized, controlled, directed, or had the ability to authorize, control or direct, and/or were actions in which each Defendant assisted, participated or otherwise encouraged, and are actions for which each Defendant is liable. Each Defendant aided and abetted the actions of the other Defendants as set forth below, in that each Defendant had knowledge of those actions, and provided assistance and benefitted

from those actions, in whole or in part, as co-conspirators of each other. Each of the Defendants was the agent of each of the remaining Defendants, and in doing the things hereinafter alleged, was acting within the course and scope of such agency and with the permission and consent of each and every one of the other Defendants.

**INTRADISTRICT ASSIGNMENT**

8. Pursuant to Civil L.R. 3-2(c) and General Order No. 44, this case is properly assigned to any division of this Court, except that pursuant to Civil Local Rules 3-2(g) and 73-1, Instagram does not consent to assignment to a Magistrate Judge residing in the Eureka Division.

**JURISDICTION**

9. This action arises under the trademark laws of the United States, 15 U.S.C. § 1051, *et seq.*, particularly under 15 U.S.C. § 1125(d), and the Declaratory Judgment Act, 28 U.S.C. § 2201. This Court has subject matter jurisdiction over the claims made herein under 28 U.S.C. §§ 1331 and 1338, 15 U.S.C. §§ 1116, 1121, and 1125, and 28 U.S.C. § 2201. This Court also has subject matter jurisdiction over the claims made herein under 28 U.S.C. § 1332 in that this is a civil action between citizens of a state and citizens or subjects of a foreign state where the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

10. This Court has personal jurisdiction over Defendants.

11. Since its launch on October 6, 2010, Instagram, a citizen of the State of California, has used the now world famous INSTAGRAM trademark in connection with its internet based social networking and photo sharing platform business.

12. Beginning October 13, 2010, Defendants, along with Weiming Zhou (who is the now-deceased father of Murong, Mufen and Meifang and husband of Guihe), began their bad faith cybersquatting campaign directed at Instagram.

13. On information and belief, that cybersquatting campaign, as further detailed below, resulted in the Defendants registering in bad faith approximately 75

CASE NO._____
COMPLAINT

domain names that are identical or confusingly similar to the INSTAGRAM mark, including <Instagram.com>.

14. Instagram's service originally ran on the domain name <Instagr.am>. Defendants then acquired <Instagram.com> as part of their cybersquatting campaign. In January 2011, Instagram (as Burbn, Inc., a California resident and Instagram, LLC's predecessor in interest) negotiated and executed a purchase agreement to acquire <Instagram.com> from Defendant Murong.

15. Even though the purchase agreement is now five years old, the Defendants didn't challenge the validity of the agreement until October 2014, almost four years after it was executed. It's clear that this new challenge is an attempt in bad faith to invalidate Instagram's good faith purchase for value of the <Instagram.com> domain name.

16. Defendants' cybersquatting scheme, including their bad faith efforts to invalidate the domain name transfer agreement years after it was consummated, amount to bad faith intentional acts which are expressly aimed at Instagram, a resident of this district, and which are intended to and are causing harm to Instagram, the brunt of which is suffered and which the Defendants know is likely to be suffered in this district where Defendants are attempting to deprive Instagram of its property and intellectual property rights.

17. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred here, and/or a substantial part of property that is the subject of the action is situated here. Specifically, Instagram's principal place of business is in Menlo Park, California, and the <Instagram.com> domain name registrar is MarkMonitor, is headquartered in San Francisco, California. Alternatively, venue is proper in this district under 28 U.S.C. § 1391(b)(3) because Defendants are subject to this Court's personal jurisdiction in this district.

CASE NO. _____
COMPLAINT

# FACTUAL ALLEGATIONS

18. This is a case about a family of serial cybersquatters who regularly traffic in domain names made up of emerging and well-known brands, and a conspiracy among those family members to extort Instagram by abusing a foreign judicial system to invalidate a legitimate domain name purchase agreement governed by U.S. law that occurred five years ago.

## Defendants' Serial Cybersquatting

19. Instagram is a world-famous photo/video sharing and editing service, application, and social network, and a wholly owned subsidiary of Facebook, Inc.

20. Since its launch on October 6, 2010, Instagram has grown at an exponential rate. Within one week, Instagram had over 100,000 users. By December 12, 2010, Instagram already had over 1 million users. By September 26, 2011, Instagram had over 10 million users. On December 9, 2011, Apple named Instagram the "iPhone App of the Year." On April 9, 2012, Facebook acquired Instagram for approximately $1 billion in cash and stock. This acquisition was widely covered by news media outlets across the world. By July 26, 2012, Instagram reached 80 million users. Instagram's rapid growth has continued, and today Instagram has over 400 million monthly active users, making it the second most popular social networking app behind the most used Facebook.

21. Since its launch in October 2010, Instagram has continuously used the trademark INSTAGRAM in interstate commerce in the United States in connection with its goods and services. Instagram owns many federal trademark registrations for the INSTAGRAM mark for a variety of goods and services, including but not limited to Reg. No. 4146057 for "Downloadable computer software for modifying the appearance and enabling transmission of photographs" and Reg. No. 4170675 for "Providing a web site that gives users the ability to upload photographs; . . . computer

services, namely, providing an interactive website featuring technology that allows users to manage their online photograph and social networking accounts."

22. The INSTAGRAM mark is valid and protectable, inherently distinctive, and exclusively owned by Instagram now and at the time Defendants acquired the domain names at issue. The INSTAGRAM mark is famous, and is recognized around the world and throughout the United States by consumers as signifying high quality, authentic media-sharing products and services provided by Instagram.

23. Murong is currently the listed registrant of at least 21 domain names that are confusingly similar to Instagram's INSTAGRAM mark. These domain names are subject to a WIPO proceeding resolved in Instagram's favor, but have yet to be transferred to Instagram. The domain names are: <insagram.com>, <instagam.com>, <instagra.com>, <instagram.net>, <instagran.com>, <instagr.com>, <instagrm.com>, <instangram.com>, <instaram.com>, <instargram.com>, <instegram.com>, <instgram.com>, <instragram.com>, <intagram.com>, <istagram.com>, <lnstagram.com>, <minstagram.com>, <nstagram.com>, <winstagram.com>, <graminsta.com>, and <wwwinstagram.com> (the "Infringing Domain Names").

24. Each of the Infringing Domain Names were registered by the Defendants after the launch of the Instagram service, clearly indicating Defendants' intent to profit from Instagram's goodwill.

25. Instagram is informed and believes that Murong and/or other members of her family have registered additional domain names that are identical or confusingly similar to the INSTAGRAM mark.

26. Although Murong is listed as the "registrant" of the Infringing Domain Names, Instagram is informed and believes that the cybersquatting scheme is a family conspiracy between and among Murong and the other members of her family named in this Complaint.

27. None of the Infringing Domain Names resolve to a website owned, operated, authorized, or endorsed by Instagram. The domain name <instagrm.com>, for example, resolves to a "parked page" listing the domain name for sale and containing "related links" which either reference Instagram directly or reference Instagram's photo related services. A true and correct printout of this "parked page" as it appeared on January 13, 2016 is attached to this Complaint as **Exhibit 1**.

28. Almost all the parked pages where Defendants direct the Infringing Domain Names contain numerous advertisements for and/or hyperlinks to a variety of products and services related to Instagram. When an Internet user looking for Instagram's website lands on one of these sites (by, for example, mistyping <www.instagram.com> as <wwwinstagram.com>), and clicks on one of the advertisements, upon information and belief, Defendants profit from these clicks.

29. On information and belief, Defendants registered, have trafficked in, and/or are currently using the Infringing Domain Names willfully and with a bad faith intent to profit from the INSTAGRAM mark and its related goodwill.

30. This is not the first instance of cybersquatting in which Defendants have been involved. Murong was also listed as the registrant of domain names in Sweden for <Instagram.se> and Belgium for <Instagram.be>. Instagram has recovered these domain names through successful dispute resolution proceedings. True and correct copies of the orders in those proceedings are attached to this Complaint as **Exhibits 2 and 3**.

31. Instagram is not the only victim of Defendants' cybersquatting scheme. A search for the email address associated with the registrant of the Infringing Domain Names reveals numerous domain names that are identical or confusingly similar to the trademarks of third parties, including but not limited to the domain names <chasedebit.com>, <googlejia.cn>, <itaobao.com.cn>, <quibids.com.cn>, and <wikilaks.org>.

CASE NO._____
COMPLAINT

32. In fact, brand owners including Ikea, Google and Dr. Leonard's Healthcare Corp. have also prevailed against Defendants' cybersquatting scheme in dispute resolution proceedings. *See Inter Ikea Systems B.V. v. zhou murong*, WIPO Case No. D2011-1962 (2011) (<ikealittle.com>); *Google Inc. v. Zhou Murong*, NAF Claim Number: FA1108001403692 (2011) (<gloogeoffers.com>, <gloogleartproject.com>, <gloogleoffers.com>, <gogledeals.com>, <gogleebooks.com>, <gogleplush.com>, <gogleshopper.com>, <gogoletv.com>, <googedeals.com>, <googeebooks.com>, et als.); and *Dr. Leonard's Healthcare Corp. v. Zhoumurong / zhou murong*, NAF Claim Number: FA1211001473823 (2013) (<carolwrightgofts.com> and <crolwrightgifts.com>).

**Instagram's Valid Purchase of the <Instagram.com> Domain Name**

33. On November 5, 2010, following the launch of the Instagram service, the <Instagram.com> domain name was acquired by Murong and/or another member of her family using the email address tony1111@vip.163.com. This acquisition was part of an ongoing cybersquatting campaign designed to profit from Instagram's goodwill.

34. On or around January 18, 2011, Instagram (as Burbn, Inc.) executed a domain name purchase agreement (the "Agreement") for the sale of the <Instagram.com> domain name after negotiating with the registrant and finally agreeing to their counteroffer to purchase the domain name for $100,000. A true and correct copy of the Agreement is attached to this Complaint as **Exhibit 4**. Through its U.S. subsidiary, the domain name marketplace Sedo acted as an intermediary to facilitate the transaction. Instagram paid $100,000 and is therefore a bona fide and good faith purchaser for value of the <Instagram.com> domain name.

35. Section 2.a) of the Agreement states, "The Seller guarantees that he/she is the owner of the aforementioned purchase object [i.e., the <Instagram.com> domain name] and may freely dispose of it." Section 4. of the Agreement states, "Provided

that the Seller and the Buyer can agree upon this, the contractual relationship between them shall be subject to the law of Massachusetts, USA."

36. After signing the Agreement and in accordance with its terms, Defendants took affirmative steps to transfer the domain name, and the transfer was completed on or about February 3, 2011 after Instagram paid the $100,000 purchase price. The domain name is currently registered to Instagram through MarkMonitor, which is an accredited domain name registrar for the .com top level domain.

37. Thereafter, Murong and her family continued their cybersquatting campaign, forcing Instagram to initiate a UDRP proceeding before the World Intellectual Property Organization Arbitration and Mediation Center ("WIPO") against Murong on September 10, 2014, in addition to the proceedings in Sweden and Belgium cited above. Via the UDRP proceeding, Instagram requested transfer of the Infringing Domain Names alleged in this Complaint to Instagram.

38. Murong was named as the respondent in the UDRP proceeding because her name appeared in the public WHOIS registration information for the domain names at issue. However, Instagram is informed and believes that Murong was at all times working jointly with the other Defendants to defend the UDRP proceeding Instagram initiated.

39. Murong's opposition to Instagram's UDRP complaint argued among other things that the Agreement to purchase <Instagram.com> was invalid. Specifically, Murong argued that she was "induced by [Instagram's] intermediary to sell the domain name <instagram.com> for an unreasonably low price on January 18, 2011[]" and that "This sale was invalid as it was done through an intermediary and the purchaser Burbn, Inc. does not exist."

40. Instagram refuted this argument in its Supplemental Filing in Reply to Murong's opposition, substantiating that Instagram's purchase of the <Instagram.com> domain name was valid and legitimate.

CASE NO.
COMPLAINT

41. After considering the parties' submissions, the WIPO panelist rejected Murong's arguments and found that Murong "is a known cybersquatter with a prior history of bad faith registration of domain names incorporating third party trademarks." The WIPO panelist found in favor of Instagram and ordered the Infringing Domain Names to be transferred to Instagram. A true and correct copy of the decision is attached to this Complaint as **Exhibit 5**. Murong has appealed this decision.

42. Undeterred, Murong and her family launched a new scheme to invalidate the Agreement through a sham legal proceeding filed in a Chinese court.

43. On or around December 14, 2015, Instagram was served with a complaint filed in the Shenzhen Futian Court (the "Chinese Case"). The plaintiffs in the Chinese Case are Murong's mother and sisters, Defendants Mufen, Meifang, and Guihe (the "Chinese plaintiffs"). The defendants in the Chinese Case are Instagram and Murong.

44. Defendants' latest ruse, as articulated in the complaint in the Chinese Case, is that Murong did not have authorization to sell the domain name to Instagram. The Chinese complaint seeks a ruling from the Chinese court that the Agreement is invalid and an order requiring MarkMonitor to transfer the registration to the Chinese plaintiffs.

45. Instagram is informed and believes that Defendants continue to act in concert. Instagram is informed and believes that the Chinese Case is a sham proceeding and nothing more than yet another attempt to invalidate the Agreement so that Defendants can take control of a domain name in which they have no legitimate interest and extort even more money from Instagram now that Instagram has grown into one of the most popular brands in the world.

46. As a result, there is an actual controversy between Instagram and Defendants regarding both the validity of the Agreement and the rightful ownership and use of the <Instagram.com> domain name.

## FIRST CAUSE OF ACTION

### (Federal Cybersquatting Regarding the Mark INSTAGRAM)

### (15 U.S.C. § 1125(d))

47. Instagram repeats, realleges, and incorporates each and every allegation of the foregoing paragraphs, as though fully set forth in this cause of action.

48. Defendants have registered and used the Infringing Domain Names with a bad faith intent to profit from the INSTAGRAM mark.

49. The INSTAGRAM mark was distinctive at the time of registration of each of the Infringing Domain Names and remains distinctive today.

50. The Infringing Domain Names were confusingly similar to the INSTAGRAM mark at the time Defendants registered each of them, and remain so today.

51. Defendants' bad faith conduct as alleged herein has caused and will continue to cause Instagram irreparable harm for which there is no adequate remedy at law, and is also causing damage to Instagram in an amount which cannot be accurately computed at this time but will be proven at trial, or at Instagram's election, an award of statutory damages of up to $100,000 for each of the 21 Infringing Domain Names (and any others that may be discovered prior to judgment) to be determined by the Court.

## SECOND CAUSE OF ACTION

### (Declaratory Judgment of Validity of Agreement)

52. Instagram repeats, realleges, and incorporates each and every allegation of the foregoing paragraphs, as though fully set forth in this cause of action.

53. An actual controversy has arisen and now exists between the parties concerning their respective rights and duties in that:

 a. Instagram contends that the Agreement to purchase the <Instagram.com> domain name is valid, and that Instagram is the rightful owner of the domain name on account of the Agreement.

 b. On the other hand, Defendant Murong and her co-defendants contend and have asserted in various proceedings before other tribunals that the Agreement is invalid and should be rescinded. Specifically, they argued in the UDRP proceeding that Murong was "induced by [Instagram's] intermediary to sell the domain name <Instagram.com> for an unreasonably low price on January 18, 2011[]" and that the "sale was invalid as it was done through an intermediary and the purchaser Burbn, Inc. does not exist." Now Murong's co-defendants have alleged in the sham Chinese Case that Murong did not have authorization to enter into the Agreement.

 c. On information and belief, Defendants are and have always been acting in concert. The Chinese Case is a sham proceeding and nothing more than yet another attempt to invalidate the Agreement so that Defendants can take control of a domain name in which they have no legitimate interest and extort money from Instagram now that Instagram has grown into one of the most popular brands in the world.

54. Instagram is entitled to a judicial determination and declaration of the rights and duties of the parties, specifically a determination that the Agreement that was executed and fully performed five years ago is valid, and that Instagram is the rightful owner of the <Instagram.com> domain name.

55. A declaratory judgment is necessary and appropriate at this time because Defendants continue to challenge the validity of the Agreement and Instagram's

rightful ownership of the <Instagram.com> domain name, and Instagram is entitled to relief from the threat of transfer of the <Instagram.com> domain name to Defendants.

## THIRD CAUSE OF ACTION

**(Declaratory Judgment as to Instagram's Status as a Good Faith Purchaser for Value and other Ownership Rights in <Instagram.com> Domain Name)**

56. Instagram repeats, realleges, and incorporates each and every allegation of the foregoing paragraphs, as though fully set forth in this cause of action.

57. A further actual controversy has arisen and now exists between the parties concerning their respective rights and duties in that:

    a. Instagram contends that it lacked any actual or constructive knowledge of any limitations on the authority of Murong, Sedo or any other person involved in negotiating the Agreement and, therefore, Instagram is a good faith purchaser for value of the domain name.

    b. Instagram further contends that even without the Agreement, it is entitled to the <Instagram.com> domain name on account of its duly registered INSTAGRAM trademark and the history of its use and Defendants' lack of use of the trademark in commerce and related bad faith activity as serial cybersquatters.

    c. On the other hand, Defendants contend that Defendant Murong lacked authorization to enter into the Agreement, that they are the rightful owners of the <Instagram.com> domain name, and that Instagram or MarkMonitor should be compelled to surrender that name to Defendants. Instagram is informed and believes that should Defendants prevail in the Chinese Case, Defendants will effectuate such transfer unless Instagram pays Defendants an amount unilaterally determined by them to retain the <Instagram.com> domain name.

CASE NO._____
COMPLAINT

58. Instagram is entitled to a judicial determination and declaration of the rights and duties of the parties, specifically a determination that on account of its status as a good faith purchaser for value and/or on account of its trademarks and preexisting use of the INSTAGRAM mark as described above it is the only rightful owner of the <Instagram.com> domain name, and that neither Instagram nor its registrar MarkMonitor can be properly required to surrender the domain name, nor are Defendants otherwise entitled to have that domain named transferred to them, or any of them.

59. A declaratory judgment is necessary and appropriate at this time because Defendants continue to challenge the validity of the Agreement and Instagram's rightful ownership of the <Instagram.com> domain name, and Instagram is entitled to relief from the threat of transfer of the <Instagram.com> domain name to Defendants.

## **REQUEST FOR RELIEF**

Instagram requests that this Court:

A. Enter a judgment that:
1. The Agreement for the purchase of the <Instagram.com> domain name, attached as **Exhibit 4**, is valid and binding;
2. Instagram is the rightful owner of the <Instagram.com> domain name;
3. Defendants registered, trafficked in, and/or used the <Instagram.com> domain name and the Infringing Domain Names with a bad faith intent to profit from the INSTAGRAM mark;
4. Defendants have no legitimate interest in the INSTAGRAM mark or any marks or domain names confusingly similar thereto.

B. Enter a permanent injunction prohibiting any domain name authority, including without limitation the Internet Corporation for Assigned Names and Numbers ("ICANN"), Versign, Inc., MarkMonitor Inc. or any other registrar, from

taking any action that results in the transfer of the registration of <Instagram.com> to any person or entity without Instagram's express written authorization.

  C. Enter a permanent injunction enjoining Defendants, their officers, directors, agents, employees, representatives and all persons acting in concert or participation with them from:

    1. Using the mark INSTAGRAM, alone or in combination with any other words or phrases, in a manner that is likely to cause confusion with respect to the mark INSTAGRAM or with respect to Instagram's approval or authorization of Defendants' actions;

    2. Registering any Internet domain names containing the term INSTAGRAM, or any variations or misspellings of the term INSTAGRAM, alone or in combination with any other terms;

    3. Interfering in any way, in any jurisdiction, with Instagram's ownership or use of <Instagram.com>.

  D. Enter an order sufficient to effect the transfer of the following domain names to Instagram: <insagram.com>, <instagam.com>, <instagra.com>, <instagram.net>, <instagran.com>, <instagr.com>, <instagrm.com>, <instangram.com>, <instaram.com>, <instargram.com>, <instegram.com>, <instgram.com>, <instragram.com>, <intagram.com>, <istagram.com>, <lnstagram.com>, <minstagram.com>, <nstagram.com>, <winstagram.com>, <graminsta.com>, and <wwwinstagram.com>. Such order shall be directed to the registrars through which the domain names are registered and to Verisign, Inc.

  E. Award Instagram Defendants' profits and damages in an amount to be proven at trial and trebled according to applicable law, or at Instagram's election statutory damages in the amount of $100,000 per Infringing Domain Name;

  F. Enter a finding that Defendants' actions were willful, deliberate, and malicious, and that this case be deemed exceptional;

- 14 - CASE NO._____
COMPLAINT

G. Enter an award of attorneys' fees and costs; and

H. Award any such other and further relief as this Court deems just and proper.

**PLAINTIFF INSTAGRAM HEREBY DEMANDS A TRIAL BY JURY.**

Dated: January 13, 2016      By: /s/ Larry W. McFarland
　　　　　　　　　　　　　　　　Larry W. McFarland
　　　　　　　　　　　　　　　　James G. Gilliland, Jr.
　　　　　　　　　　　　　　　　Christopher T. Varas
　　　　　　　　　　　　　　　　Ryan T. Bricker
　　　　　　　　　　　　　　　　Kollin J. Zimmermann
　　　　　　　　　　　　　　　　*Kilpatrick Townsend & Stockton LLP*
　　　　　　　　　　　　　　　　Attorneys for Plaintiff
　　　　　　　　　　　　　　　　INSTAGRAM, LLC